The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right. Be seated, please. The next case we're looking at today is Jessup v. Barnes Group, Inc. Mr. Arnold, we'll hear from you when you're ready. Thank you, Judge. May it please the Court. My name is Andy Arnold, and I represent Jeff Jessup, who's the appellant in this action, and the plaintiff in the action below. This is an appeal from a district court's grant of summary judgment on three claims under the ADA that Mr. Jessup had brought against the Barnes Group. He had had a claim for lawful discharge, a claim for failure to reasonably accommodate, and a claim that we styled a hostile work environment. The district court, relying on Halperin v. Abacus Tech, held that Jeff Jessup was not a qualified individual with a disability. And in doing so, the district court ignored evidence in the record which clearly demonstrated that Jeff Jessup was, in fact, a qualified individual with a disability, or at least from which a reasonable juror could conclude that Jeff Jessup was a qualified individual with a disability. Mr. Jessup had been, went out on leave in July 2017 due to anxiety, severe anxiety, and major depression. He requested a reasonable accommodation when he went out, and that request was denied. However, What was the accommodation you requested? A leave of absence. He requested a leave of absence. And he submitted medical certification in support of his request for leave. And, again, it was denied. Now, although it was denied, I'm missing something on that. He got benefits, didn't he? And this is July 2017. That's right. He got short-term disability benefits. And he was allowed to return. Well, he did return, Your Honor. I understand, but I'm not talking about, I'm talking about, you said he was denied an accommodation in July, and I want to understand what you're saying. So what was the accommodation that he was denied? When you say a leave of absence, yet he was allowed to return. Now, is there a distinction? Well, no, Your Honor. He requested the leave of absence. They denied the leave of absence, told him that he was terminated and would not be allowed to return. Denied? They denied his leave of absence in August. They didn't terminate him then, did they? No, they did not. Okay. They terminated him actually in January 2018. Yeah. Well, they wrote him a letter and terminated him. Right. Said, you're fired. That's November. That's November timeframe. That's correct. And then he, despite that, he sort of comes back in and pretends to work for a week, and they finalized the process in January. Well, again, and I would take exception with the court that he pretended to work. There's nothing in the record that anything he did was pretend. I mean by pretend, I don't mean that he didn't do work, but he had been fired already. Well, and I don't think that's the case. I thought you just said he was fired. The letter fired him in November. The letter notified him that he would be fired, but he was not fired. So it was in the future tense. It said you will be fired, not that you're fired. It said the company has made the decision to terminate your employment, but then they took no actions to effectuate the termination. They left him on the payroll. He remained connected to the IT. He didn't do the work. In other words, their internal memo said we want to preserve his benefits. That's right. And so they did not follow through and call his car back and stop pay while he was getting benefits. That's right. But then they wrote the letter in January and said we're confirming our termination of you in November. That's right. After he returned to work, they confirmed. Well, they didn't accept him back. He went on the computer, but they didn't accept him back because when he went back and claimed he's coming back, they said no, we terminated you in November. Well, again, he returned to work. He worked for an entire week. He took a certification class that was necessary to return to work. 30B6 HR witness confirmed that he had taken the class that was necessary to return to work. He participated in conference calls. He interacted with. . . This one week return got into the system and got to HR, and they said we fired him, and they sent a letter confirming the fact that they had fired him. But let me raise a point in this regard. This has obviously got some ambiguities about it based on the facts you've pointed out. But in his complaint in paragraph 37. . . Yes, Your Honor. He alleges basically that he was permanently totally disabled. And that, of course, is just an allegation. And he argues now that he went back in January, and so he wasn't permanently. But then he gives his deposition in December of 2019, and he's asked about paragraph 37, and he says that's true, and over several questions he affirms I am totally disabled, and I have been told so by my professional. And then the record contains a report in August of 2018 that says just that, confirming 37. So now the district court says he alleged this complaint, he sticks with it under oath, uncompromisingly, unconditionally in December of 2019, and it's supported by a medical record. How can he now allege that he could go back to work? Let me start by saying I don't know what medical record you're referring to. Well, there's a report on August 10, 2000. . . No, no, no, that's not the report. There's a report in May of 2019. But you don't need a report. You don't need the report. Okay, so let's take the allegations in the complaint, and I would just suggest that the allegations in the complaint do not say that he was disabled and never able to return to work after July 2017. That's not what these allegations say. The plaintiff has not been able to recover from this debilitating relapse into severe anxiety and major depression and is now fully and completely disabled and unable to work. That's right. And so when this complaint was written in August 2018, he was fully and completely disabled. He had not. . . All right, now let's move forward. And he was asked. . . Wait, wait, wait. Yeah? But that he was unable to recover and is implies then not just at the time it's filed. That's saying since July to the present, he's been unable to recover. Yeah, he's been unable to recover from anxiety and unable to recover from depression and now is fully unable to work. The idea that anybody that has depression or anxiety is therefore permanently, totally, and completely disabled is not what we're alleging. What we allege is that he, and this is in paragraph 35, the discriminatory treatment was severe and pervasive, resulted in a hostile work environment, caused plaintiff to relapse into debilitating anxiety and depression and necessitated a need for a reasonable accommodation in the form of leave of absence. What about his deposition testimony? Well, his deposition testimony, quite honestly, he didn't answer the question. But what he said was when he was asked about the date of his disability, he made reference to the Social Security finding that that was the date of his Social Security. What page is that on? 197, 198. Thank you. But before that, there's a series of questions. He's asked if he became completely, when he became completely disabled and unable to work. And he says, I think after the hostile events that occurred between April 3 or 1 until I went on leave again on the 19th, I think the things that have occurred in that box have created an anxiety towards unemployment. They then ask, Since July 2017 to December, you are fully and completely disabled and unworked. That's been affirmed by Social Security. Right. And it was affirmed by Social Security because Social Security has this concept of unsuccessful work attempts. You want us to read that answer as him saying, Social Security says that I'm disabled, but I'm not disabled. Or I haven't always been disabled. Or I'm not disabled when I don't want to be disabled. Well, you have to read it in light of the fact that he actually returned to work. Let me make this point. If I was standing here today saying, Jeff Jessup was totally and permanently disabled on July 19, 2017, the first thing I would hear was, But he returned to work. The next thing I would hear is, And the return to work you're talking about is the, after he's fired when he logs onto his computer and listens to phone calls. What I would say is, again, I appreciate your conclusions of fact. But in a light most favorable to the plaintiff, he returned to work. He did his job. That's the standard we're here. I understand that there may be some skepticism. And there may be some skepticism on behalf of a jury. But if we're going to take the standard that is required, then he returned to work. And not only did he return to work. So, in essence, you're basically saying your claim depends on his ability to respond to emails and listen to a phone call from home after he was told he was fired. That being able to slip that in ensures that you, that's the point that means you win because summary judgment is inappropriate. Well, again, didn't slip it in. He returned to work and he did his job like many people have done their job over the last year from home. And, again, you know, the idea that all he has to do is sit there and listen on the phone and do some of these things, that again can be a cynical view of what took place. But a view that is compelled, that is the view in a light most favorable to Jeff Jessup, he returned to work and did his job. Well, that's only so if he's able to do that. You fire a person, right? You fire a person. You fire a secretary who's doing a terrible, terrible job. And she comes back three or four months later and decides to type. She can't make that decision. You are the authority that decides whether she works for you or not. It doesn't matter how well she types or how much work she does. Well, the question becomes was she fired? Right, but he was fired. How do we know that? Because we have it in the record. No, we have a letter that says you're being terminated and nothing else. We've got substantial evidence in this record. There's a letter when he came back. That's right. And that's he's fired too. Nope. What does it say? It says we confirm that he was fired November 17th. What it says is you've been, the date of the letter was January the 8th. Now, of course, January. Let's give you the 13th, the 12th or 13th, whatever it is. So it's backdated. In the letter, and I was looking for the citation to that letter, it says that you went out on leave in July and you have been on leave ever since. That's what the letter says. So I'm going to pull the, so the letter is. Read the part where they said we fired you. 680. So JA 680, let's see. Here it is. At that request, this is a historical basis. I'm looking at 310. On October 17, you were forwarded to us a note from your health care partner saying you needed additional time. At that request was not reasonable. As that request was not reasonable, given the nature of your job, you are terminated from your job on November 7th. You were terminated on November 17th, and again through a letter from our attorney to your attorney. This letter is official confirmation of your termination, effective November 17, 2017. And so if you ignore. Let's take this. Let's accept your point. This is the termination letter. Well. It doesn't matter. He was terminated because he wasn't qualified. That's their point. I understand that. Now, in the deposition, on December, a year later after these events, he's asked, was paragraph 37 true at that time? And he said it is true at that time and still is. Didn't he say that? He testified that it was true at the time he was testifying. Question is, was that true at the time this complaint was prepared and filed back in August of 2018? Yes, it was. It is, and it was true at the time, and it's true as of today, according to my doctors and therapists. Now, how clearer can it be? It can't be any clearer that on the date of his deposition, he's saying that I am unable to work. It's been that way since the complaint, he says. The complaint was drafted six months after he was fired. I understand. The complaint was drafted. The complaint was filed. The complaint was filed in August 2018. He gives his deposition. Paragraph 37 is included there. That says he's permanently, basically, he's permanently decided. You can argue that, okay, that was an allocation as of that time, and things change. That's right. But now he comes back over a year later, and after that week where he purportedly returned, and he says in his deposition, it is, paragraph 37 is true, and it was true at the time, and it's true as of today, according to my doctors and therapists. Now, it seemed to me the district court says he was disabled at the time of his complaint, and he confirms that, and he was disabled at the time of the deposition. But that's not the, but being a qualified individual with a disability at the time of your complaint or at the time of your deposition isn't the requirement. The question is whether or not he was a qualified individual when he was terminated. Well, that covers the period. No, it does not. And so I would make one last point so this doesn't get ignored. The January 8th letter from Barnes, first paragraph, this is JA 681, says, unfortunately, you went back on leave July 19th, 2017, and you have been on leave ever since. How does that square with him being terminated in November if he's been on leave ever since as of January 2017? Now, if you ignore this, we can go back and say he's terminated. There is a question of fact here. Well, there may be a question of fact as to the effective date of the termination. The reason I say this is you've left out a critical document, which was the internal document saying we have to keep paying him and keep him on the payroll so as to give him the benefits, disability benefits. And that was written when he was terminated in November. That email was in January when he returned and came back and they were going, was he terminated? And they're going, it's not that simple. That was another. I'm just not sure I understand your argument, so help me here. Okay. So we have these various statements. It says in deposition. It says in his complaint that he is fully and completely disabled and not able to work. It's true then. It's true now. So what you're saying is that he was able to work, though, back at the time when they purported to fire him. Is that what you're saying? That's right. Okay. I'm glad to hear that. I'm now understanding your argument. But what does that get you? If he is now permanently disabled? Well, it gets, again, if their conduct, and I've got evidence from treating physicians and other psychologists, that their discriminatory actions cause psychological injury that have rendered him unable to work, then the discrimination is the, being unable to work is the damage. Okay. It is the damage. So you concede at this moment and forevermore that he is fully and completely disabled and unable to work? As of today. Well, and in the foreseeable future, he said. Yes. Yeah. And was in the past. And he was unable to work and needed a leave of absence, which he, which. Well, no. Let's leave off the last part. He was unable to work and was disabled as of July 2017. Until January. Not until. On July 17, when he was left to work, he was unable to work. And required a leave of absence. Well, I don't know if he was required to leave of absence. Well, then you haven't. I mean, that doesn't address this. Because I've got a medical certification that says he needs a leave of absence. I understand. But the employer doesn't have to give him a leave of absence. Well, if they want to comply with the law and reasonably accommodate him, unless there's an undue burden. Unless he's permanently disqualified. But he's not. There's nothing in here that says permanent. No. The complaint says that. Where? 37. 37 does not use the word permanent. No, it doesn't. What does it say? Well, it says that he has not been able to recover. And that he is now fully and completely disabled and unable to work. All right, so from the period from July 2017 until August of 2018, he is fully disabled, right? No. It says he's not been able to. He has not been able to fully recover. Right. Not fully. You're putting words in. He was not able to recover from this debilitating, but it didn't, and my point is, but he did return to work and we got. No, no, just a minute. Now this complaint is filed in August of 2018, right? That's right. That is after that period of a week when he returned, right? That's right. So the complaint seems to suggest from July when he left work disabled to August 2018, he has remained disabled. And that's not what that says? No, it is not. All right. Thank you. All right, we'll hear from Mr. Bright. Mr. Bright, sometime during your argument, I would like you to address what I now take to be his argument, that he fleshed out for us here. I'm going to respond to that initially. Okay, great. Thank you. My name is Tom Bright. I'm with the Ogletree Law Firm out of Greenville, South Carolina, and it's my privilege to represent the Barnes Group today. And, John, I want to address your specific question. I think your question was, you concede that he was unable to work now and in the past, and the question was, I think, was he unable to work and what do we do about that issue in January when he says he reported to work? The bottom line is none of that is relevant. What we have is his deposition testimony and his complaint, which have the benefit of hindsight. That was done in August when the complaint was filed, and we are also talking about December 2019 when his deposition was taken. So, with the benefit of hindsight, when asked the question, when did you become disabled, he very clearly and unequivocally states, since July 19, 2017, I had been unable to work. It doesn't matter what he did in January or who wrote him a letter in January or anything else. He has told us in no uncertain terms that since July 17, I have been totally incapable of working. And when did he say that? He said that in his deposition. He said, as you quoted, I've quoted the deposition testimony at 197 of the record. We also have, of course, the complaint, which is the joint appendix at 23. And what's important is I continued in his deposition to push him on that issue. So, I asked, so that would be since July 17 or July 2017 to today? Judge Niemeyer, I asked him the exact question that you're asking. From July 17, or from July 2017 until today, which was the date of his deposition, which was in December of 2019, which is now two years removed, with the benefit of hindsight, you were fully and completely disabled and unable to work. And Judge Richardson, his response was, that's been affirmed by the Social Security Administration. I don't know how you... But his argument, to give it in the light, the best light I can, what his argument is, is he's avoiding your question, right? And so, that we ought to, there's a dispute of fact, as his claim would be, as to whether that should be read instead of saying, I think it would most naturally read, yes, comma, that has been affirmed by the Social Security. He suggests, which I think is how we're reading it, or you're suggesting it's read, he wants it to say instead, that I'm not answering that question, but the Social Security Administration says that I'm disabled. And so, tell me why we shouldn't read it. I mean, he's trying to say there's a caveat there, that he's not answering the question, but instead is just saying, I'm not going to tell you the answer to that. I'm instead just going to talk about a football game, which is irrelevant. And I think that I understand what you're trying to get at, but let's look at the question. The question says, so since July 2017 until today, you are fully and completely disabled and unable to work. He says, that's been affirmed. Let's stop there. Isn't that an answer to the question? That answered my question. Now, he added, well, and Social Security has acknowledged it, too. Actually, I think he does a better job at the top of page 197, where the question is, paragraph 37 of the complaint says that you have been unable to recover from your debilitating relapse into severe anxiety and major depression, and now are fully and completely disabled and unable to work. You have, so going back, you have been unable to recover and still are. And his answer is, that's true. That's right. And again, I think that... And this is in December. That's right. And the complaint covered the week as did his deposition covered the week. I agree with you 100%. But his best story there, I'm not saying it works, but I just want to make sure I understand your position. His best story there, I think what he's trying to say is, is that when he says, I have not recovered from my debilitating injury, what I mean by that is that I've had this debilitating problem, but for a week in January, we should implicitly read in, but for a week in January, I was healed. And so I was fully capable of working for that week. Even though I still had the injury, I was able to work during that week despite the debilitating injury. And I would suggest to you that that's not the question that was asked and that's not the question that was answered. The question that was asked... I think his theory, just to carry on exactly what Judge Richardson was posing there, I think the theory is, I was in fact recovered in January and I went to work based on that and I have some medical support for that. And that I was then fired at that point because the employer didn't want me back and the firing itself caused disability again. Again, there's no allegations in the complaint at all regarding that theory. I'm trying to understand both sides here. And I am remiss to try and make too much of an argument when the questions have been the way they are. But again, to respond to Judge Richardson, again, I go back to the question. So that would be since July 2017 to today, you are fully and completely disabled and unable to work. He could have answered, no, there was a period in January that I was able to return to work. That's how he could have answered the question if that was in fact the truth. But with the benefit of hindsight, as we were sitting there in December of 2019, he said, that's been affirmed. In other words, yes, I have been totally and completely disabled. Let's see, his problem, or what I think the argument would be, yeah, the Social Security Administration said that, but he's not claiming that that's correct. Well, and again, I don't mean to be disrespectful, but I think that the answer to the question is, that's been affirmed. He's saying, yes, I've been disabled. No, he's saying that someone has held that he's been disabled. Well, he could have said, well, according to the Social Security Administration, they think. I think, well, OK. But I think what he said is, that's been affirmed. He was answering my question. I think the reality is there is a hedge there of some kind. He could have said, yes, that's true. But he put it off. It seems to me at the top of page 197 is a clearer indication of what he's saying. Agreed. But you tried to pin it down to have the continuum. And at that point, he hedged. I couldn't disagree with you, with your characterization of that testimony at page 197. Is the question, so just to make sure I understand the question. The question we're asking, is it fair to say that the question we're asking is whether a reasonable jury could read that testimony and conclude that it means what your opponent thinks rather than what it is most naturally read to mean? And I think when you take the testimony in context with the complaint, you take that testimony in context with the other language of the other questions that we asked on page 197, I think it's abundantly clear. He was saying that since July, I've been busy. But the district court went a different route. Instead of asking whether the jury could reach the conclusion, the district court went the route, and maybe that's the issue really before us, that this is sort of judicial estoppel. In other words, he has said it in the complaint and he's said it in his deposition. I'm relying on it and throwing it out. He cannot now change his story. I think what the judge was relying on was the fact that these facts that you have been referring to about him returning to work, about him coming in and doing certain things and answering phone calls, all came in by way of declaration that was filed not in response to summary judgment, but in response to the report and recommendation of the magistrate. So after summary judgment has received a report and recommendation from the magistrate, they submit this declaration that says, oh, by the way, here are all the things I did in January when I returned to work. What the judge was saying is, we can't allow a plaintiff to create an issue of fact by contesting his own testimony. His testimony, as you pointed out in page 197, was abundantly clear. What he attempted to do by way of declaration in response to the report and recommendation of the magistrate was say, oh, well, wait a minute, there's some things I did in January. Let me recite to you what those things were. And the judge says, you can't use, and that's the significance of the Halpern decision, you cannot create an issue of fact for a jury by submitting testimony after the fact that is in direct conflict with your prior testimony. So the court basically ignored that declaration. Well, but see, the problem is, as we've all been trying to talk to you about, is that his answer to your, which I agree with Judge Mena, the question on 197 is probably your best thing. And was that true at the time that this complaint was prepared and filed back in August of 2018? It is. It was true at that time, and it's true as of today. But he doesn't say it was true at every moment along the way. I think that's where he is. Well, and again, I think what you're saying, maybe, is that to reach Judge Monson's conclusion, you have to ignore the has not recovered from debilitating injury, right? So if it's a, I mean, the plain import of a debilitating injury is one that disables you from doing what you can do. And so read in context, no reasonable reader of the English language would read that to mean, there was a point in which I recovered enough to work, but not now. That's exactly right. But it doesn't quite, it doesn't say, and in every moment since then. Well, that's right. But you know, we read things as reasonable readers of the English language. Unless the court has other questions for me, I have nothing else to add to my argument. All right. Thank you, Mr. Bright. Thank you. Could you just briefly address, I know it's a little bit of a collateral point, but how we should take the affidavit filed after the summary judgment motion is submitted? Yes. So let me just make the point, because I've looked this up in the dictionary, debilitating does not mean disabled. It just doesn't. So we're going to get into the English language. Well, what is everybody talking about? That's very sophisticated. I mean, it seems to me the whole issue, he left in July because he couldn't work at that point. And needed a little rest. And he needed a rest or whatever to get rid of the stressors and that type of thing. And he alleges in his complaint that that's the condition I had and I've been unable to recover. And so then he's asked in his deposition, is that true? Have you been unable to recover? And he says it was true then and it's true now. And it was true then. Yeah. But the gap between then and now is was unable to recover. And now, sure, that's being technical too, but that's exactly what the language says. Now, my point is more of a procedural one, and that is you submit a motion, you brief, put everything before the court on a motion for summary judgment, and a magistrate judge comes up with a recommendation. And in response to the recommendation, you now add a new argument, which is I wasn't disabled at the time of that January week. So, first of all, we didn't add a new argument. Understand this. Jeff Jessup's deposition took place the day after the 30B6 deposition, which I asked question after question after question about Jeff Jessup's return to work. This was not something that was thought up. The EEOC charge was based on the fact that he returned to work. So, as for the declaration, the rule related to R&Rs allows the district court to take additional evidence. I will contend that that declaration doesn't contradict one thing in his testimony or one thing in the complaint. It explains it. But even if you exclude it, then you've got to say, well, what about this idea that he returned to work? And the thing we haven't mentioned, we've got a... Where's the record show that he returned to work? His testimony. Do you know what page? Well, I can... The week. Oh, the week. Oh, okay, yeah, okay. The week, the week, the week. And so what Halprin says is that if the only question of fact is between the complaint and the testimony and the declaration, and those two things are inconsistent, which I don't think they are, but let's say they are, then I lose. But that's not what we have here. And the thing we haven't talked about is the medical certification at JA-297 that says he is fully able to return to work. We have to ignore that. Or we can read his answers in the context of the facts. Is there a report attached to that statement? Yes. I mean, they provide a form. Aetna provides a form. She completed the form and said that he could perform full duties without restrictions. Where is the analysis of the... Is there a report of the visit that the doctor had with him? No, she completed the report that was provided by... Just one statement, that one statement she gave. Well, there were multiple statements. Again, if you look at 297, is where the form is at. And she states various things. I'll leave that to you to see. But again, it is not just one line, he can return to work. And again, my point is, if he were contending that he was unable to work after July 19th, 2017, this document would be thrown in our face and you'd say, how can you say he was not able to return to work? You've got a doctor that says he could fully return to work. In addition, Dr. Ladd, who's at JA-711, says that it was his termination in January 2018 that made him unable to work. The last thing I want to make sure you don't... Yes, he is. He's unable from this... And when did that happen? Well, he attempted to look for other jobs, but he was never able to go to work and his health care provider said, we do not think you're able to work. Okay, and when... January, after January 2018. Now, let me say one more quick thing. Your claim, your representation is, is that there is only that one week where he was able to return to work and that after that week was over, he was unable to work and before that, from July to January 8th, he was unable to work, but that week, he was good. He was good and may have continued to be good if he had not been terminated. So, was he paid for the week? I don't think that's in the record. I'll tell you what I do know is in the record is that his short-term disability benefits were terminated when he returned. That form that he returned stopped his short-term disability benefits. Yeah, but weren't they trying to get him benefits as you talked about earlier? They were trying to get him to leave, but let me say this one last thing. Well, they were trying to get him benefits too. No, they just were trying to comply with their plan. Well, but that was getting them benefits. Well, sure. Yeah. So, the thing I would want you to add is even if he was unable to work, not work after July 2017, that has nothing to do with the hostile work environment claim. The qualified individual disability, he was qualified individual disability between April and July when the hostile environment allegations are alleged. So, you can't say that, hey, he was disabled on July 2017 and therefore all his claims are affected by that. It would only be those claims, the wrongful discharge claim that we allege arose in January. The hostile environment claim, the court said, well, you've got to be a qualified individual with a disability. Well, during the period of time that we allege that the hostile environment was created, it is undisputed that he was a qualified individual with a disability because he was there doing his job. So, you can't just take that one date and apply it to all the claims. And I address that in my brief. And since I'm over time, I'm going to be quiet unless you have any other questions. All right. Thank you, Mr. Arnold. Thank you. Our practice, as you all know, is to come down and greet counsel. And we suspended that during the COVID period for purposes of safety. We're continuing that. But don't think we've abandoned that. We appreciate counsel's arguments. We understand that. And it's a grand old tradition. And I promise you, whatever good a promise is, to shake your hands the next time you come up to court. Thank you very much. We'll proceed on the last case.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Julius N. Richardson